# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION NO. 05-363-4** |
| **vs.** | : | |
| | : | **CIVIL ACTION NO. 09-4139** |
| **PEDRO RISQUET,** | : | |
| **Defendant.** | : | |
| | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                 **November 29, 2011**

Before the Court is Defendant Pedro Risquet's Motion to Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C. § 2255.[1]  For reasons that follow, the Court finds that the grounds pursuant to which Defendant brings his Motion lack merit.  Consequently, the Court will deny the Motion without an evidentiary hearing.[2]

## I. BACKGROUND

On June 29, 2005, a grand jury in the Eastern District of Pennsylvania returned a nineteen-count indictment against Defendant and seven co-defendants.[3]  Defendant was charged

---

[1] Doc. No. 433.

[2] "In evaluating a federal habeas petition, a District Court must hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  United States v. Kenley, No. 10-1259, 2011 WL 3211508, at *1 (3d Cir. July 29, 2011).  If the record as a whole "conclusively show[s] that the prisoner is entitled to no relief," a court is not required to hold an evidentiary hearing. United States v. Dawson, 857 F.2d 923, 927 (3d Cir. 1988) (quoting Government of the Virgin Islands v. Bradshaw, 726 F.2d 115, 117 (3d Cir. 1984)) (internal quotation marks omitted).  Here, the Court finds that the record as a whole conclusively establishes that Defendant is entitled to no relief.  Accordingly, the Court will deny the Motion without an evidentiary hearing.

[3] Indictment, Doc. No. 1.

with conspiracy to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. § 846
(Count One); distribution of more than 500 grams of cocaine, in violation of 21 U.S.C. §
841(a)(1) (Count Thirteen); and possession with intent to distribute more than 500 grams of
cocaine, also in violation of 21 U.S.C. § 841(a)(1) (Count Seventeen).  Six of Defendant's co-
defendants (Defendants Raul Estevez,[4] Ibel Blanch, Ricardo Cruz, Leopoldo Morell-Estevez,
David Gutierrez, and Robert Garcia) pled guilty.  Defendant and co-defendant David Calhoun
proceeded to trial, which began on April 17, 2006.

      At trial, the Government presented evidence of a conspiracy among Defendant and his co-
defendants.  The evidence at trial focused primarily on the role of Defendant and co-defendant
Calhoun in the conspiracy.[5]  Co-defendant Raul Estevez was the Government's key witness.
Estevez testified that from July 2004 to February 2005, Defendant acted as Estevez's main
cocaine supplier and that Defendant sold cocaine to Estevez on a monthly basis at a rate of about
one kilogram per month.[6]  On two occasions during the life of the conspiracy Estevez purchased
cocaine from co-defendant Ricardo Cruz.[7]  Estevez serviced two customers: Jerry Clarke,
identified in the Indictment as "Person #1," and co-defendant Calhoun.[8]

      The mechanics of the conspiracy were straightforward.  Estevez would receive phone

---

[4]  Raul Estevez is identified as "Raul Esteve, a/k/a/ 'Raul Estevez'" in the Indictment.  The Court will refer
to him as "Estevez" throughout.

[5]  The Court's discussion of the conspiracy focuses on the actions of Defendant and his involvement in the
conspiracy.

[6]  See, e.g., Trial Transcript 4/18/06, Day 2 ("Trial Tr. Day 2") at 17:7-19.

[7]  Trial Tr. Day 2 at 20:4-25.

[8]  Trial Tr. Day 2 at 17:22-25.

calls from his customers, who sought to purchase cocaine. Estevez would then call Defendant

and arrange for transport of the cocaine from Defendant to Estevez.  Estevez would purchase the

cocaine from Defendant, typically for approximately $25,000 per kilogram, and then resell it to

Calhoun for a profit.  To establish the mechanics of Defendant's role in the conspiracy, the

Government presented telephone conversations between Defendant and Estevez, and between

Estevez and Calhoun, recorded between December 11, 2004, and February 3, 2005.[9]  The

Government played the tapes for the jury, and then questioned Estevez regarding the recorded

conversations.

On April 20, 2006, the jury found Defendant guilty of all counts charged.  On August 4,

2006, Defendant was sentenced to 20 years imprisonment[10] followed by 10 years supervised

release, and ordered to pay a special assessment of $300.[11]  Defendant's appeal[12] was denied by

the Third Circuit on May 1, 2008.[13]  On October 6, 2008,[14] the Supreme Court denied certiorari.

---

[9]  See, e.g., Trial Tr. Day 2 at 93:1-15.

[10]  Twenty years was Defendant's mandatory minimum sentence as a result of his prior felony drug
conviction.  See 21 U.S.C. § 841(b)(1)(A) ("If any person commits such a violation after a prior conviction for a
felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be
less than 20 years.").

[11]  Doc. No. 349.

[12]  Doc. No. 359.  Defendant filed his Notice of appeal on August 21, 2006.  Although the appeal was
untimely, the Third Circuit found that since the Government did not raise the issue, the issue had been waived, and
addressed the merits of the appeal.  See United States v. Risquet, No. 06-3842, 276 F. App'x 114, 115-16 (3d Cir.
May 1, 2008).

[13]  Doc. No. 390.

[14]  Defendant asserts that certiorari was denied on October 6, 2009; however, the docket reflects that
certiorari was in fact denied on October 6, 2008.  See Risquet v. United States, No. 08–5337 (Oct. 8, 2008).

Thereafter, Defendant timely filed the § 2255 Motion now before the Court,[15] and the case was reassigned to this Court.[16]

Defendant advances two grounds in support of his § 2255 Motion.  First, he argues that his counsel was ineffective for failing to object to the Government's Motion to Modify the § 851 Notice.  Defendant asserts: "Counsel should have opposed the government's request to make a clerical change, on account of it was aiming a structural change (the government was not referring to a typeset matter) the government was seeking a 20 years minimum mandatory. . . . Counsel should have challenged the government's § 851 notification filed on March 28, 2006, because it was grounded on false information."[17]  According to Defendant, the effect of granting the Motion to Modify was to increase the mandatory minimum sentence he faced from 10 to 20 years.  Second, Defendant claims that the Government constructively amended the Indictment at trial asserting that the evidence at trial established the existence of multiple conspiracies, rather than a single, unique conspiracy as charged in the Indictment.[18]

---

[15]  Petitioner filed his initial Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on September 14, 2009.  (Doc. No. 427.)  On September 18, 2009, the Court issued an Order finding that the Motion was defective because it was missing pages and was not signed or dated, and ordered that the Clerk of Court furnish Petitioner with a blank copy of the Court's standard § 2255 form.  (Doc. No. 428.)  The Court directed that should Petitioner wish to proceed with the Motion, he must complete the standard form and return to the Clerk of Court within thirty days of the date of the Order.  (Id.)  On September 28, 2009, Petitioner filed the § 2255 Motion now before the Court.  (Doc. No. 433.)

[16]  Doc. No. 391.  Defendant was tried before and sentence by the Honorable Marvin Katz.  The case was reassigned to this Court on July 31, 2008.

[17]  Petition at 16-17.

[18]  Defendant argues: "[D]uring trial, when the government presented its case in which it demonstrated the existence of several conspiracies where as the indictment charged an unique [sic] conspiracy. . . . [T]his alteration of the indictment has been conceived in violation of my constitutional rights to an indictment, on account of substantially changed [sic] the crime charged by the grand jury on count one of the indictment at stake."  Petition at 19.

## II. DISCUSSION

Title 28, United States Code, Section 2255 provides that a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside or correct the sentence, by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  "Habeas corpus relief is generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[19]  Here, Defendant challenges his sentence on the two grounds mentioned above.

### A.    Ground One: Ineffective Assistance of Counsel for Failure to Object to the Government's Motion to Modify the § 851 Notice

Title 21, United States Code, Section 851(a)(1) provides:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

A § 851 Notice is the written notice that § 851(a)(1) requires be submitted to a defendant prior to trial.  The Notice informs the defendant that the Government intends to use defendant's prior

---

[19]   United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989).

conviction(s) to enhance the mandatory minimum sentence upon conviction.  The requirement of written notice is jurisdictional and the lack of notice before trial constitutes plain error.[20]

Here, the Government filed an "Information Charging Prior Offenses" (the § 851 Notice) on March 28, 2006, prior to the commencement of trial.[21]  Therefore, Defendant was provided with written notice of the Government's intent to use his prior convictions to enhance his sentence in compliance with § 851.  Defendant complains, however, that his trial counsel was ineffective for failing to object to the Motion to Modify the Rule 851 Notice made by the Government at sentencing.  According to Defendant, the Motion to Modify, which was summarily granted by the Court, had the effect of enhancing his mandatory minimum term of imprisonment from 10 to 20 years.

Defendant misunderstands the effect of the Government's Motion to Modify.  As the Court noted at sentencing, the Motion was "to the defendant's benefit," and in fact, had the effect of *lowering* the mandatory minimum from life imprisonment to 20 years of imprisonment.[22]  Defense counsel did not object because, as Defendant acknowledges in his Motion, granting the Motion had the effect of reducing Defendant's mandatory minimum and was therefore beneficial to him.

Before being charged by indictment in the instant case, Defendant had been convicted on

---

[20]  United States v. Isaac, 655 F.3d 148, 157 (3d Cir. 2011) ("[T]he requirements set out in § 851 are mandatory and a district court may not impose an enhanced sentence unless the defendant has been notified of the 'strikes' in compliance with these provisions.").

[21]  Doc. No. 200.

[22]  Sentencing Tr. 8/4/06 (Doc. No. 383) at 5:15-6:4.

two separate bills of indictment in Texas.[23]  In the Rule 851 Notice, the Government stated its

intent to use both prior convictions to enhance Defendant's mandatory minimum sentence,

increasing Defendant's mandatory minimum term to life imprisonment pursuant to 21 U.S.C. §§

846 and 841(b)(1)(A).[24]

     The Government took the position at sentencing, however, that Defendant should be

deemed to have only one prior felony drug conviction.[25]  Although Defendant technically had two

prior felony drug convictions, both convictions "stem[med] from the same criminal conduct on

the same date and would, typically, be charged as one case."[26]  With only one prior felony drug

conviction, Defendant's mandatory minimum sentence was 20 years, rather than life.[27]  At

sentencing, the Government moved to modify its 851 Notice to reflect its acknowledgment that

the two prior convictions should be treated as one conviction in enhancing Defendant's sentence.

     The use of a prior conviction to enhance a sentence is expressly permitted by statute.[28]

Further, to treat Defendant's two prior convictions as one prior conviction had the effect of

diminishing the enhancement.  Thus, not only was the effect of the Motion permissible, it was

---

[23]  See Government's Sentencing Memorandum ("Gov't Sent. Memo.") at 3.

[24]  Section 841(b)(1)(A) provides: "[S]uch person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years . . . . If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after *two or more prior* convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment."

[25]  Gov't Sent. Memo. at 3-4.

[26]  Gov't Sent. Memo. at 4.

[27]  21 U.S.C. §§ 846 and 841(b)(1)(A).

[28]  21 U.S.C. § 841(b)(1)(A).

beneficial to Defendant.  His counsel's failure to object was therefore not an error and cannot

serve as the basis of an ineffective assistance of counsel claim.[29]  The Court will not modify

Defendant's sentence based on this ground.

**B.     Ground Two: Constructive Amendment of the Indictment**

"[A] court cannot permit a defendant to be tried on charges that are not made in the

indictment against him."[30]  This right is derived from the Fifth Amendment, which provides that

"[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a

presentment or indictment of a Grand Jury."[31]  A constructive amendment violates the Fifth

Amendment by depriving a defendant of his right "to be tried only on charges presented in an

indictment returned by a grand jury."[32]  A constructive amendment occurs when, "in the absence

of a formal amendment, the evidence and jury instructions at trial modify essential terms of the

charged offense in such a way that there is a substantial likelihood that the jury may have

convicted the defendant for an offense differing from the offense the indictment returned by the

grand jury actually charged."[33]  Where the evidence, the arguments of counsel, or the jury

---

[29]   It is well established that ineffective assistance of counsel claims are evaluated pursuant to the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, counsel is presumed to have acted reasonably and to have been effective unless a defendant can demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced defendant.  Id. at 687.  Here, the alleged error did not prejudice Defendant, it benefitted him; thus, counsel's performance was not deficient.

[30]   United States v. Vosburgh, 602 F.3d 512, 531 (3d Cir. 2010) (quoting Stirone v. United States, 361 U.S. 212, 217 (1960)).

[31]   U.S. Const. amend. V.

[32]   United States v. Navarro, 145 F.3d 580, 585 (3d Cir. 1998).

[33]   Vosburgh, 602 F.3d at 532 (quoting United States v. Daraio, 445 F.3d 253, 259-60 (3d Cir. 2006)).

instructions "broaden[] the possible bases for conviction from that which appeared in the indictment," an indictment is constructively amended.[34]  "[T]he 'key inquiry is whether the defendant was convicted of the same conduct for which he was indicted.' If a defendant is convicted of the same offense that was charged in the indictment, there is no constructive amendment."[35]

Here, the evidence, arguments, and jury instructions did not broaden the scope of the indictment.  Defendant was convicted of the same crimes with which he was charged in the Indictment.  Defendant argues that although Count One of the Indictment charged a single conspiracy, the evidence presented at trial established two conspiracies.  According to Defendant, the testimony of co-defendant Raul Estevez established the existence of two separate conspiracies: one among Estevez, Calhoun, and Defendant, and the other among Ricardo Cruz, Estevez, and Calhoun.

Contrary to Defendant's assertion, however, Estevez's testimony established the existence of a single conspiracy among Estevez, Blanch,[36] Cruz,[37] Morell-Estevez,[38] Calhoun, Gutierrez,[39]

---

[34]  United States v. McKee, 506 F.3d 225, 229 (3d Cir. 2007) (quoting United States v. Lee, 359 F.3d 194, 208 (3d Cir. 2004)) (quotation marks omitted).

[35]  Vosburgh, 602 F.3d at 532 (internal citation omitted).

[36]  See, e.g., Trial Tr. Day 2 at 19:20-20:1.

[37]  See, e.g., Trial Tr. Day 2 at 20:2-21:5.

[38]  See, e.g., Trial Tr. Day 2 at 21:6-10.

[39]  See, e.g., Trial Tr. Day 2 at 21:11-15.

Garcia,[40] and Defendant.  As discussed above, Blanch, Cruz, Morell-Estevez, Gutierrez, and

Garcia admitted their involvement in the conspiracy and pled guilty; only Defendant and Calhoun

went to trial.  As a result, Estevez's testimony primarily focused on Calhoun's and Defendant's

involvement in the conspiracy.  This focus did not have the effect of establishing two separate and

discrete conspiracies, but rather highlighted the involvement of Calhoun and Defendant by

explaining the transactions in which they were involved.  These transactions were a part of the

overall conspiracy.

Estevez's testimony, along with the other evidence at trial established that Defendant acted

as Estevez's primary supplier.[41]  Calhoun and Clark would contact Estevez to purchase cocaine.[42]

Estevez would then contact Defendant to arrange the transport of a given quantity of cocaine to

Estevez's home in Philadelphia.[43]  Estevez would purchase cocaine from Defendant, and then re-

sell the cocaine to Calhoun or Clark.[44]  Although Defendant acted as Estevez's primary supplier,

Estevez purchased cocaine from Cruz for resale on two occasions.[45]

At trial, counsel for Defendant and for Calhoun advanced the argument that the evidence

proved the existence of multiple conspiracies, rather than a single conspiracy as charged in the

Indictment.  The Court recognized his argument and instructed the jury as follows:

---

[40]  See, e.g., Trial Tr. Day 2 at 21:16-17.

[41]  Trial Tr. Day 2 at 17:16-17

[42]  Trial Tr. Day 2 at 17:22-18:18.

[43]  Trial Tr. Day 2 at 18:7-10

[44]  Id.

[45]  Trial Tr. Day 2 at 20:2-21:5.

The defendants contend that the government's proof fails to show the existence of an overall conspiracy. Rather they claim they were actually separate and independent conspiracies with various groups or members at various times. Whether there existed a single unlawful conspiracy or any such or many such agreements or an agreement at all is a question of fact for you to decide, you, the members of the jury, in accordance with the instructions which I give you.

When two or more persons join together to follow and further one unlawful desire or purpose, a single conspiracy exists. By way of contrast, multiple conspiracies exist when there are unlawful agreements to achieve distinct purposes.

Proof of several separate and distinct independent conspiracies is not proof of the single overall conspiracy as charged in the indictment, unless you are satisfied that one of the conspiracies proven by the government beyond a reasonable doubt is in fact that single conspiracy.

You may find that there was a single conspiracy despite the fact that there were changes in personnel by termination, withdrawal, additions of new members or different activities, or all of those, so long as you find that some of the coconspirators continued to act for the duration of the conspiracy for the purposes charged in the indictment. The fact that members of the conspiracy are not always identical does not necessarily imply that separate conspiracies exist.

If, however, you find that the conspiracy charged in the indictment did not exist, you must acquit the defendants of the single conspiracy charged in the indictment. This is so even if you find that some conspiracy other than the one charged in the indictment existed, even though the purpose of both conspiracies may have been the same coincidentally or even though there may have been some overlap in membership.

Similarly, if you find that a particular defendant was a member of another conspiracy, and not the one charged in the indictment, you must acquit the defendant of the conspiracy charge.

Therefore, essentially what you must do is determine whether the conspiracy that is charged in count one of the indictment existed and whether these two

defendants participated in it.[46]

Having been so instructed, the jury found Defendant guilty of the single conspiracy charged in the Indictment.  As the jury is presumed to follow the Court's instructions, and as the evidence supported the finding that Defendant was guilty of the charged conspiracy, the Court cannot conclude that there was a constructive amendment to the Indictment and will not grant relief on this basis.[47]

### III. CONCLUSION

For the forgoing reasons, the Court finds that neither ground advanced by Defendant supports granting the § 2255 Motion.   In addition, since Defendant has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not be issued.[48]

An appropriate Order follows.

---

[46] Trial Transcript 4/20/06, Day 4 ("Trial Tr. Day 4") at 14:18-16:15.

[47] Although Defendant does not raise the issue of a variance in the § 2255 Motion, the Court has considered whether a variance occurred in the instant case nonetheless.  "A variance occurs 'where the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment.'"  Vosburgh, 602 F.3d at 532 (quoting Daraio, 445 F.3d at 259).  Unlike constructive amendments, "[n]ot all variances constitute reversible error.  A variance 'result[s] in a reversible error only if it is likely to have surprised or has otherwise prejudiced the defense.'"  Id. (quoting Daraio, 445 F.3d at 262).  Prejudice occurs when the variance negatively affects a substantial right.  Id.  "A variance that sufficiently informs the defendant of the charges against him and allows him to prepare his defense without being misled or surprised at trial does not prejudice the defendant's substantial rights."  Id.  Here, the Court finds that the evidence presented at trial proves facts as charged in the Indictment.  Further, defense counsel argued that the facts established multiple conspiracies, rather than the single conspiracy charged in the Indictment.  The jury rejected this argument.  Thus, even if Defendant had raised the issue of a variance, the Court would deny the Motion.

[48] See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).  Pursuant to Local Appellate Rule 22.2, at the time of a final order denying a habeas petition, a district judge is required to determine whether a certificate of appealability ("COA") should issue.  A COA should not be issued unless "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Id. at 484 (internal quotation marks omitted).